SETTLEMENT AGREEMENT AND MUTUAL RELEASE
(Including Minors)

**THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE** ("Settlement Agreement") is entered this _____ day of _____, 2004 by Rafael O. Villareal, individually, and as Personal Representative of the Estate of Marco C. Barrientos, and as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, minors; Marco Venicio Barrientos; Nicholas Kambourakis; Nomiki Kambourakis; and Superior Painting & Contracting Co., Inc. (hereinafter the "Releasors"); and B.B. Trammell & Co., Inc.; Leland H. Breyer; Containment Design, Inc.; Mark Gozion; Joseph Salvatore; Ron Walton; Walton Technology, Inc. (hereinafter the "Releasees").

**RECITALS**

A. On or about October 19, 2000, Rafael O. Villareal, Marco Celim Barrientos and Nicholas Kambourakis were working for Superior Painting & Contracting Co., Inc. on the Chesapeake City Bridge in Chesapeake City, Maryland when an environmental containment system being deployed on the bridge collapsed. As a result of this incident, Marco Celim Barrientos was injured and died and Rafael O. Villareal and Nicholas Kambourakis were injured (hereinafter, the "Occurrence").

B. The parties desire to enter into this settlement agreement in order to provide for certain payments in full settlement and discharge of all claims which have been made or which could have been made as a result of the Occurrence.

C. The term "Claimants" means Rafael O. Villareal, individually, as Personal Representative of the Estate of Marco Celim Barrientos and as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, minors, Marco Venicio Barrientos, Nicholas Kambourakis and Nomiki Kambourakis.

D. This settlement is made in settlement of all claims arising out of the Occurrence with the sole exception of claims asserted by or on behalf of Stamatios Vinias and Gail Vinias, which claims are being settled pursuant to a separate instrument.

E. Marco Venicio Barrientos is the father of Marco Celim Barrientos. Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz are the children of Marco Celim Barrientos, deceased. Rafael O. Villareal certifies that these minor children are the sole beneficiaries of the Estate of Marco Celim Barrientos under Maryland law and that these minor children and Marco Venicio Barrientos are the only persons entitled under Maryland law to damages by reason of the alleged wrongful death of Marco C. Barrientos.

**AGREEMENT**

The parties agree as follows:

1. **Release and Discharge**

A.     For the sole consideration of payments and rights set forth in this Settlement Agreement and upon payment hereunder, the Releasors release, acquit and forever discharge Releasees including their past, present, and future officers, directors, stockholders, attorneys, agents, principals, servants, representatives, employees, heirs, executors, administrators, predecessors, successors in interest, subsidiaries, affiliates, partners, privies, assigns, and insurers, and all other persons, firms, associates, partnerships and corporations, whether named herein or not, specifically including joint tortfeasors and subsequent tortfeasors, The United States of America, and the United States Department of the Army Corps of Engineers, which are or might be claimed to be liable to the Releasors as a result of the Occurrence, from all claims, damages, costs, loss of service, loss of society and companionship, attorney fees, cost of litigation, humiliation, embarrassment, mental anguish, injury to reputation, and monetary benefits or compensation of any nature whatsoever, whether known or unknown, foreseen or unforeseen, as a result of and by reason of the Occurrence. However, nothing set forth herein shall release or

1

discharge any defense which Superior may assert against any such other person who may assert a claim or action against Superior provided, however, that the release does extend to bar any claims which Superior would otherwise have against one or more of the Releasees. Superior acknowledges and affirms that it has no knowledge of any claim or potential claim by any third party against Superior arising from or related to Superior's involvement in any aspect of the project at the Chesapeake City Bridge in Chesapeake City, Maryland.

Claimants specifically agree that Releasees shall be released and discharged from any liability to any lien holder, including, but not limited to, the injured workers' insurance fund, workers compensation insurer, medical insurer, or provider of funeral services, and that any such lien will be satisfied and discharged from the proceeds of this settlement. Furthermore, Claimants agree to indemnify Releasees and hold them harmless from any expenses, costs, or damages arising from any claims asserted against any or all Releasees by any lien holder. In settling these claims, it is understood and agreed by all parties that Claimants are entering into a full and final settlement of all claims they have brought or which could have been brought for the recovery of workers compensation benefits and that it is the intention of the parties to resolve, settle and release any workers compensation lien and any further liability for future workers compensation payments, including, but not limited to, attorneys' fees or proportionate share of costs in connection with any lien reimbursement paid to any workers compensation insurer under the laws of Maryland or any other state which might be made by Claimants or their counsel against any workers compensation insurer or the employer Superior Painting & Contracting Company's recovery in this matter. Each Claimant individually agrees to indemnify and save harmless the Releasees and Superior from any lien holder or subrogation claim for damages and/or expense which pertains to that specific Claimant for which this release is given. Each claimant individually agrees to indemnify and hold Releasees and Superior harmless from any and against all such claims, demands, obligations, actions, cause of action, and expenses which pertains to that specific Claimant arising out of and by reason of the Occurrence that are brought by each Releasor, its heirs, or assigns or the state accident fund/injured workers' insurance fund or any medical insurer, workers compensation insurer or health care provider or any person claiming under wrongful death or survival laws not identified as Releasors herein.

The Claimants, Rafael O. Villareal, as personal representative of the Estate of Marco Celim Barrientos and as next friend of the minor children Silvia Rosa Barrientos and Marco Celim Barrientos, and Marco Venicio Barrientos, and their representatives, successors, heirs, administrators, executors and assigns further covenant and agree with the Releasees that if they, any one of the minor children, and/or any other person file(s) a lawsuit or otherwise make(s) a claim against the Releasees and/or someone other than the Releasees for damages as a result of the injuries and death of Marco Celim Barrientos, they will cause the same to be dismissed, and they will indemnify and save each of the Releasees harmless from all claims for damages, costs, loss of services, expenses, attorney fees, litigation expenses and compensation that any of the Releasees incurs in defense of any such claims or demands or that any Releasee is found liable to pay to anyone as a result of any such lawsuit or claim.

The Releasors further agree that they will not reveal, and instruct their attorneys and any other person acting on their behalf or on behalf of their representatives, not to reveal to the general media, or to any other person, the fact that this claim has been settled, or any terms contained in this Release [except as attached hereto as Appendix 1], including any of the amounts, numbers, or terms and conditions of any sums payable under this Release, except as may be reasonably necessary for the conduct of their business and to the extent necessary to achieve approval of the Workers Compensation Commission, or to report to insurers or reinsurers such information as necessary related to the settlement, or as may subsequently be ordered by a court of competent jurisdiction.

B.   The Claimants and the Releasees hereby release, acquit and forever discharge Superior including its past, present, and future officers, directors, stockholders, attorneys, agents, principals, servants, representatives, employees, heirs, executors, administrators, predecessors, successors in interest, subsidiaries, affiliates, partners, privies, assigns, and insurers and all other persons, firms, associates, partnerships and corporations which are or might be claimed to be liable as a result of the Occurrence from all claims, damages, costs, loss of service, loss of society and companionship, attorney fees, cost of litigation, humiliation, embarrassment, mental anguish, injury to reputation, and monetary

benefits or compensation of any nature whatsoever, whether known or unknown, foreseen or unforeseen, as a result of and by reason of the Occurrence. However, nothing set forth herein shall release or discharge any workers' compensation claim filed by any Claimant. Counsel for Claimants shall provide a letter to counsel for Releasees acknowledging satisfaction of any workers' compensation liens within a reasonable time after such liens have been discharged. Claimants agree that they will satisfy any outstanding liens, subrogation claims and/or medical or funeral bills from the settlement proceeds distributed to them pursuant to this Release.

C. <u>Release and Discharge of Claims by Releasees</u>

As consideration for the execution of this Settlement Agreement and Mutual Release and subject to consummation of this Settlement Agreement and Mutual Release, the Releasees hereby release, acquit and forever discharge each other, including their past, present, and future officers, directors, stockholders, attorneys, agents, principals, servants, representatives, employees, heirs, executors, administrators, predecessors, successors in interest, subsidiaries, affiliates, partners, privies, assigns, and insurers of and from claims that Releasees have made or could have against each other for any and all damages, known or unknown, foreseen or unforeseen, as a result of or arising out of the Occurrence, including, but not limited to, claims for contribution or indemnification.

2. <u>Payments</u>

The Releasors agree to pay the sum of $1,885,000 as follows:

A.     Initial Payments. No later than May 14, 2004:

   (1)    B.B. Trammell & Co., Inc. shall pay:

      a.    the sum of $424,700 to settle the claims made by the Claimants. Such payments shall be delivered to Salsbury, Clements, Beckman, Marder & Adkins, LLC ("Salsbury"), attorneys for the Claimants and shall be payable as follows:

| | |
|---|---|
| 1. To Rafael O. Villareal, as next friend to Silvia Rosa Barrientos | $ 99,850.00 |
| 2. To Rafael O. Villareal, as next friend to Marco Celim Barrientos Ortiz | $ 99,850.00 |
| 3. To Marco Venicio Barrientos | $ 25,000.00 |
| 4. To Rafael O. Villareal | $100,000.00 |
| 5. To Nicholas Kambourakis | $ 75,000.00 |
| 6. To Nicholas Kambourakis and Nomiki Kambourakis, his wife | $ 25,000.00 |

and

      b.    the sum of $123,300 to settle the claim made by Superior. Such payment shall be made payable to Superior and shall be delivered to Huddles & Jones, P. C. ("HJPC"), attorneys for Superior.

   (2)    Containment Design, Inc. and Mark Gozion shall pay a total sum of:

      a.    the sum of $32,550 to settle the claims made by the Claimants. Such payments shall be delivered to Salsbury, attorneys for the Claimants and shall be payable as follows:

| | |
|---|---|
| 1. To Rafael O. Villareal, as next friend to Silvia Rosa Barrientos | $ 8,000.00 |
| 2. To Rafael O. Villareal, as next friend to Marco Celim Barrientos Ortiz | $ 8,000.00 |
| 3. To Rafael O. Villareal | $ 8,275.00 |
| 4. To Nicholas Kambourakis | $ 8,275.00 |

and

b. the sum of $9,450 to settle the claim made by Superior. Such payment shall be made payable to Superior and shall be delivered to HJPC, attorneys for Superior.

(3) Joseph Salvatore shall pay:

a. the sum of $305,750 to settle the claims made by the Claimants. Such payments shall be delivered to Salsbury, attorneys for the Claimants and shall be payable as follows:

| | |
|---|---|
| 1. To Rafael O. Villareal, as next friend to Silvia Rosa Barrientos | $ 32,000.00 |
| 2. To Rafael O. Villareal, as next friend to Marco Celim Barrientos Ortiz | $ 32,000.00 |
| 3. To Rafael O. Villareal | $120,875.00 |
| 4. To Nicholas Kambourakis | $ 95,875.00 |
| 5. To Nicholas Kambourakis and Nomiki Kambourakis, his wife | $ 25,000.00 |

and

b. the sum of $89,250 to settle the claim made by Superior. Such payment shall be made payable to Superior and shall be delivered to HJPC, attorneys for Superior.

(4) Walton Technology, Inc. shall pay:

a. the sum of $697,500 to settle the claims made by the Claimants. Such payments shall be delivered to Salsbury, attorneys for the Claimants and shall be payable as follows:

| | |
|---|---|
| 1. To Rafael O. Villareal, as next friend to Silvia Rosa Barrientos<br>    Lump Sum payable at settlement | $ 11,835.00 |
| 2. To CNA for annuity benefiting Silvia Barrientos | $155,565.00 |
| 3. To Rafael O. Villareal, as next friend to Marco Celim Barrientos Ortiz<br>    Lump Sum payable at settlement | $ 10,950.00 |
| 4. To CNA for annuity benefiting Marco Celim Barrientos Ortiz | $156,450.00 |
| 5. To Rafael O. Villareal | $180,150.00 |
| 6. To Nicholas Kambourakis | $155,150.00 |
| 7. To Nicholas Kambourakis and Nomiki Kambourakis, his wife | $ 25,000.00 |
| 8. To Rafael O. Villareal as Personal Representative of the Estate of<br>    Marco Celim Barrientos | $  2,400.00 |

and

b. the sum of $202,500 to settle the claim made by Superior. Such payment shall be made payable to Superior and shall be delivered to HJPC, attorneys for Superior.

B. Of the settlement proceeds payable by Walton Technologies, described in paragraph 2.A.(4)(a) of the Agreement, the sum of $312,015.00 shall be used to purchase annuities for the benefit of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz. The terms and conditions of the annuities are as follows:

(1) Payments.

In consideration of this Agreement, the CNA Insurance Companies on behalf of its Releasees, hereby agrees to pay Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz (the "Payees") the sums outlined below:

(a) Monthly Payments to Silvia Rosa Barrientos - starting January 10, 2008, One Thousand One Hundred Dollars ($1,100) per month payable for one hundred forty-four (144) months (12 years) certain and guaranteed.

4

(b) Lump Sums - deferred, certain and guaranteed payments to be made to or on behalf of Silvia Barrientos in the following amounts and at the following times:

(1) Nine Thousand Dollars ($9,000) paid on January 10, 2008;
(2) Nine Thousand Dollars ($9,000) paid on January 10, 2012;
(3) Nine Thousand Dollars ($9,000) paid on January 10, 2015;
(4) Nine Thousand Dollars ($9,000) paid on January 10, 2017;
(5) Fifty Thousand Dollars ($50,000) paid on January 10, 2020.

(c) Monthly Payments to Marco Celim Barrientos Ortiz - starting January 10, 2012, One Thousand Five Hundred Dollars ($1,500) per month payable for one hundred forty-four (144) months (12 years) certain and guaranteed.

(d) Lump Sums - deferred, certain and guaranteed payments to be made to or on behalf of Marco Celim Barrientos Ortiz in the following amounts and at the following times:

(1) Eleven Thousand Dollars ($11,000) paid January 10, 2012;
(2) Eleven Thousand Dollars ($11,000) paid on January 10, 2016;
(3) Eleven Thousand Dollars ($11,000) paid on January 10, 2019;
(4) Eleven Thousand Dollars ($11,000) paid on January 10, 2021;
(5) Fifty Thousand Dollars ($50,000) paid on January 10, 2024.

(2) Payees' Right to Payments.

Rafael O. Villareal, as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz hereby acknowledges and agrees the periodic payments cannot be accelerated, deferred, increased or decreased by Rafael O. Villareal, any guardian of the payees, or any payee; nor shall Rafael O. Villareal, any guardian of the payees, or any payee have the power to sell, mortgage, encumber or anticipate the periodic payments, or any part thereof, by assignment or otherwise.

(3) Payees' Beneficiaries.

Any payments to be made after the death of either Payee pursuant to the terms of the Agreement shall be made to such person or entity as shall be designated in writing by each Payee to the annuity issuer or the assignee. If no person or entity is so designated by the Payees, or if the person designated is not living at the time of a Payee's death, such payments shall be made to the estate of the deceased Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the annuity issuer and received by the annuity issuer before such payments are to be made. Rafael O. Villareal, as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, any subsequent guardian of Payees, the Payees and subsequent Payees shall have the right to name and change beneficiaries without notice to or the consent of CNA Insurance Companies.

(4) Consent to Qualified Assignment.

4.1. The parties hereto acknowledge and agree CNA Insurance Companies may make a "qualified assignment" within the meaning of § 130(c) of the INTERNAL REVENUE CODE OF 1986, as amended, of Releasees; and/or CNA Insurance Companies' liability to make the periodic payments set forth in Sections 2.B.a. to CNA Structured Settlements, Inc. or such other assignee designated by the annuity issuer. The Assignee's obligation for payment of the periodic payments shall be no greater than that of CNA Insurance Companies and/or its Insured (whether by judgment or agreement) immediately preceding the assignment of the periodic payment obligation.

4.2. Any such assignment, if made, shall be accepted by Rafael O. Villareal, as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, any subsequent guardian of Payees, and by the Payees, without right of rejection and shall completely release and discharge Releasees and CNA Insurance Companies from the periodic payment obligations assigned to the assignee. Claimants recognize that, in the event of such an assignment, the assignee shall be the sole obligor with respect to the periodic payments obligation and that all other releases that pertain to the liability of Releasees and CNA Insurance Companies shall thereupon become final, irrevocable and absolute.

(5) Annuity Purchase.

5.1 With the exception of the cash sums paid to Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, and in accordance with this Agreement, CNA Insurance Companies, or its assignee, shall fund the liability to make the periodic payments through the purchase of an annuity policy from Continental Assurance Company for each Payee.

5.2 CNA Insurance Companies, or its assignee, shall be the sole owner of the annuity policy and shall have all rights of ownership. Rafael O. Villareal, as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, any subsequent guardian of Payees, the Payees and subsequent Payees, shall have no legal interest, vested or contingent, in the said annuity contract. Rafael O. Villareal, as next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz shall be provided a copy of such annuity contracts. Payments under the annuity contract shall be mailed directly by the annuity company to the payee.

(6) Discharge of Obligation.

The obligation of the annuity issuer to make each periodic payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of each Payee, or the electronic transfer of the funds into a previously designated account of the Payees. The Payees shall be responsible for maintaining a proper mailing address and mortality information with the annuity issuer. The Payees shall have the right to change their addresses for delivery of the funds without notice to or the consent of Releasees, so long as any such change shall be in writing on a form acceptable to the annuity issuer and delivered to the annuity issuer in sufficient time for the annuity issuer to make the change.

In the event annuity payments are to be made to a Payee that does not have a United States Social Security Number, before the initial payment is made and annually thereafter, such Payee shall file with the assignee a Medallion Signature Guarantee or its equivalent. The Payee understands that failure to file a Medallion Signature Guarantee may result in a suspension of payments until the Guarantee is filed. In the event that a Signature Guarantee is required, the assignee shall send the appropriate notification and forms, in English and Spanish, to the last known address of the Payee in sufficient time for the Payee to obtain and return the Signature Guarantee.

C. Dispute(s) between any of the Claimants concerning distribution of the settlement proceeds shall not affect the validity and enforcement of this Settlement Agreement and Mutual Release.

D. All sums set forth herein constitute damages on account of personal injuries and sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, except with respect to sums paid or payable to Superior, and that no portion of the settlement proceeds represents exemplary or punitive damages, or pre-judgment or post-judgment interest, but that such claims are nonetheless being released.

3. **Attorney's Fees**

Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement and the matters and documents referred to herein.

4. **Waiver and Compromise of Claims**

The Releasors hereby acknowledge and agree that they further expressly waive and assume the risk of any and all claims for damages which exist as of this date but of which the Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect their decision to enter into this Settlement Agreement. The Releasors further agree that they have accepted the promised payment of sums specified herein as a complete compromise of matters involving disputed issues of law and fact and they assume the risk that the facts or law may be otherwise than they believe. It is understood and agreed by the parties that this settlement is a compromise of a doubtful and disputed claim, and the payments are not to construed as an admission of liability on the part of Releasees by whom liability is expressly denied.

5. **Approval of Settlement**

Releasors acknowledge and agree that since this settlement involves minors, the settlement must be approved by the United States District Court for the District of Maryland. The parties agree that a United States Magistrate Judge may order the approval of the settlement.

Upon approval of the settlement by the United States District Court for the District of Maryland, Releasors will request stays of the actions filed by them in the cases captioned *Rafael O. Villareal, et al. v. Walton Technology, Inc., et al.*, United States District Court for the District of Maryland, case no. JFM-02-CV-1667 and *Nicholas Kambourakis v. Walton Technology, Inc., et al.*, United States District Court for the District of Maryland, case no. JFM-02-CV-268 (the "Federal actions"); and *Superior Painting & Contracting Co. v. Walton Technology, et al.*, Circuit Court for Baltimore City, case no. 24-C-02-000373. Within 10 business days after receipt of payment in full of all amounts set forth in paragraph 2.A. above, the Releasors shall cause their respective actions to be dismissed with prejudice. With regard to the claims asserted on behalf of the minor children, Claimants agree that such dismissals with prejudice will operate, as to the Releasees, as an adjudication upon the merits so as to preclude any further action based upon the claims which were brought or which could have been brought in the Federal actions.

6. **Warranty of Capacity to Execute Agreement**

As to their respective claims, Releasors represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of actions referred to in this Agreement and Release except as otherwise set forth herein and they have the sole right and exclusive authority to execute this Agreement and Release and receive the sums specified in it; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement and Release.

7. **Entire Agreement and Successors in Interest**

This Agreement and Release represent the entire agreement between the Releasees and Releasors with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

8. <u>Representation of Comprehension of Documents</u>

In entering into this Agreement and Release, the Releasors represent that they have relied upon the legal advice of their attorneys, who are the attorneys of their own choice and that the terms of this Settlement Agreement and Release have been completely read and explained to them by their attorneys.

9. <u>Governing Law</u>

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Maryland.

10. <u>Additional Documents</u>

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

11. <u>Invalid Provisions</u>

If, after the date hereof, any provision of this Agreement and Release is held to be illegal, invalid, or unenforceable under the present or future laws effective during the term of this Agreement and Release, such provision shall be fully severable. In lieu thereof, there shall be added a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and legal, valid, and enforceable.

12. <u>Amendment</u>

This Agreement shall not be modified or amended except by an instrument in writing signed by all Parties.

13. <u>Effectiveness</u>

This Agreement and Release shall be effective, and the payment obligations hereunder shall be triggered, after execution of same by all Parties and final Court approval of the Agreement and Release in accordance with Paragraph 5 hereof.

14. <u>Certification of Authority and Consultation With an Interpreter and Counsel</u>

All Parties have consulted with counsel prior to signing this Agreement. Rafael O. Villareal certifies that he is the Personal Representative of the Estate of Marco C. Barrientos with authority to enter into this binding Settlement Agreement and Release and that he is the next friend of Silvia Rosa Barrientos and Marco Celim Barrientos Ortiz, minors, with authority to act on their behalves. Rafael O. Villareal, Marco Venicio Barrientos, Nicholas Kambourakis, Nomiki Kambourakis, and Superior Painting & Contracting Company further certify that they have carefully read this Settlement Agreement and Release, that they have had the opportunity to review it with counsel, that they have reviewed it with a Spanish or Greek interpreter, as appropriate, and understand and agree to all of the terms of this Agreement. Rafael O. Villareal does so as Personal Representative of the Estate of Marco C. Barrientos, on his own and on behalf of the minor children.

15. <u>Counterparts</u>

This Agreement may be executed in one or more counterparts each of which shall be deemed an original, but all of which together constitute one and the same instrument, and facsimiles or photographic copies of such signed counterparts may be used in lieu of the original for any purpose.

**IN WITNESS WHEREOF, intending to be legally bound hereby,** the Parties hereto have duly executed this Agreement and Release in Multiple originals.